# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** United States Trustee, et al. v. Gene Saavedra, et al.

**Case Number:** 04-01075

### Document Information

**Description:** Findings of Fact and Conclusions of Law by Re: [1-1] Complaint NOS 424 Objection To Discharge (727) .

**Received on:** 2005-06-07 10:55:20.000

**Date Filed:** 2005-06-07 00:00:00.000

**Date Entered On Docket:** 2005-06-09 00:00:00.000

### Filer Information

**Submitted By:** Patti Hennessy

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:   GENE SAAVEDRA and                                        No. 7-04-10318 MA
         GEORGIA JEAN SAAVEDRA,

   Debtors.
_____

UNITED STATES TRUSTEE,

   Plaintiff,

v.                                                        Adversary No. 04-1075 M

GENE SAAVEDRA,

   Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a trial on the merits of this adversary proceeding on April 19, 2005 after which the Court took the matter under advisement. The United States Trustee was represented by Alice Nystel Page. Defendant[1] Gene Saavedra ("Debtor") was represented by Bill Gordon & Associates (Stephen C.M. Long). The United States Trustee requests the Court to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (4).[2] The United States Trustee's claims are based primarily on

---

[1] Although the Complaint was initially filed against Gene Saavedra and Georgia Jean Saavedra, summary judgment was entered in favor of Georgia Jean Saavedra, and she was dismissed from this proceeding. *See* Order Granting Summary Judgment for Defendant Georgia Jean Saavedra. (Docket # 25).

[2] Although the Complaint includes a claim under 11 U.S.C. § 727(a)(5) based on the same alleged acts and/or omissions, the United States Trustee did not argue for denial of discharge under this subsection at trial, and the Court will not consider it as part of these Findings and Conclusions. Likewise, the Court will not consider any factual allegations raised in the Complaint in support of the United States Trustee's claims for denial of discharge pursuant to 11 U.S.C. § 727(a)(2) and/or (a)(4)

1

alleged undervaluations of two parcels of real property on the Debtor's statements and schedules and the recording of a claim of lien against one of the parcels of real property just prior to the filing of the bankruptcy. After considering the evidence presented at trial, and being otherwise sufficiently informed, the Court finds that the United States Trustee has met its burden of showing that the Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy case sufficient to warrant a denial of discharge in accordance with 11 U.S.C. § 727(a)(4). The Court makes the following findings of fact and conclusions of law:

1. Debtor and his wife filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 16, 2004.

2. Debtor's Schedule A lists real property located at 512 Hanna Place, Socorro, New Mexico ("Residence") valued at $53,000.00 and 3.2 acres of vacant land in Luis Lopez, New Mexico ("Vacant Land") valued at $1,600.00 ($500.00 per acre).

3. Debtor and his wife initially claimed a homestead exemption in the Residence in the amount of $53,000.00. Debtor and his wife later amended their Schedule C to claim a homestead exemption in the amount of $60,000.00. *See* Docket #29. The Trustee has objected to the homestead exemption. *See* Docket #32.

4. Debtor acquired the Residence as a gift, as his sole and separate property, from his aunt in

---

that were not included in the Pre-Trial Order. *See* Rule 16(e), Fed.R.Civ.P., made applicable to bankruptcy adversary proceedings by Rule 7016, Fed.R.Bankr.P. (The pre-trial order "control[s] the subsequent course of action . . ."); *In re Butler,* 308 B.R. 1, 18 (Bankr.S.D.N.Y. 2004) ("'[i]t is an established procedural principle that a party's failure to include a legal theory or defense in the pre-trial order results in its subsequent abandonment or waiver.'") (quoting *Katt v. City of New York*, 151 F.Supp.2d 313, 346 (2001) (internal quotation marks and citation omitted)).

1993. *See* Exhibit 11 (Deed from Concepcion Montoya to Gene Saavedra, dated August 27, 1993).

5. In a prior bankruptcy proceeding, Debtor and his wife valued the Residence at $68,000.00. *See* Exhibit 20.

6. A homeowner's insurance policy values the Residence at $64,000.00. *See* Exhibit E.

7. Debtor did not obtain an appraisal for the Residence in order to estimate the value of his Residence on his bankruptcy statements and schedules, but testified that he relied on a drive-by evaluation by a realtor.

8. Debtor acquired the Vacant Land as his sole and separate property by gift from his parents in 1998. *See* Exhibit 12 (Deed from Teodoro and Rachel M. Saavedra to Gene Saavedra, dated November 11, 1998). The Vacant Land has been in the Debtor's family for over 100 years.

9. Debtor and his wife amended Schedule A to reflect a secured claim of $6,600.00 against the Residence, representing a tax lien filed by New Mexico Taxation and Revenue Department. *See* Docket # 7.

10. At the § 341 meeting of creditors, Debtor testified that the Vacant Land was not worth much because it had a lot of salt on it, and that nothing would grow on it. *See* Exhibit 9, Transcript of § 341 Meeting of Creditors on February 20, 2004 ("There was no value in the land. Nothing really wants to grow on it. It's got a lot of salt on it.").

11. Subsequent to the § 341 meeting of creditors, Debtor and his wife again amended Schedule A to change the total number of acres for the Vacant Land to 1.7, and to reduce the reported

value to $850.00.[3]

12. Historically, Debtor has allowed his brother to use the Vacant Land to grow alfalfa and grass for his own use. To this day, Debtor's brother continues to use the Vacant Land to grow alfalfa. Debtor's brother also keeps some cattle on the Vacant Land.

13. Debtor has paid irrigation charges associated with the Vacant Land to the Middle Rio Grande Conservancy District ("M.R.G.C.D.") since he acquired the Vacant Land in 1998.

14. Debtor applied for a loan with First State Bank in Socorro ("Bank") in July of 1999 for the purpose of purchasing a vehicle.

15. A loan application was prepared by the Bank which valued the Vacant Land at $20,000.00 for 2.5 acres. *See* Exhibit 3. Debtor signed the loan application. *Id.*

16. The amount of the loan was $10,378.00. *See* Exhibit 5.

17. The sole security for the loan was the Vacant Land. *See* Exhibit 5.

18. Orban Winton, a certified real estate appraiser, appraised the Residence in November of 2004. His appraisal of the Residence reflects a value of $90,000.00 based on comparable sales of similar homes in the area. The appraisal was conducted after the date of a severe hail storm that damaged roofs in the area, including the roof on the Residence.

19. The Residence is in need of some other repairs, such as stucco repair, removal of mildew near the ceiling utility vent, carpet repair, plaster repair, etc. In addition, a shed situated on the

---

[3]This amendment also reflected an additional undivided one-third interest in 3.9 acres, subject to a life estate in the Debtor's parents. This additional property is not at issue in this proceeding. The Debtor later amended his Schedule A yet again to describe his interest in the 3.9 acres with greater specificity. *See* Docket #36.

property is collapsing and in need of significant repairs, the sprinkler system is not working, and the roof over the patio area is collapsing.

20. The Debtor's brother, Ted Saavedra, filed a $10,000.00 claim of lien against the Vacant Land just prior to the petition date. *See* Exhibit 13 (Claim of Lien dated December 19, 2003).

21. The Debtor did not disclose the claim of lien in his initial statements or schedules, although he was aware it had been filed.

22. At the initial § 341 meeting of creditors, Debtor indicated that the claim of lien on the Vacant Land was "taken care of" and could be released. *See* Exhibit 9. As of the trial date, no release of lien has been recorded.

23. Discharge provisions are to be construed liberally in favor of the debtor, and strictly against the objector. *In re Morris,* 302 B.R. 728, 731 (Bankr.N.D.Okla. 2003) ("In order to further the policy under the Bankruptcy Code of providing a debtor with a "fresh start," all objections to discharge 'should be construed strictly against the creditor and liberally in favor of the debtor.'") (quoting *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996)). The objecting party bears the burden of proving that a debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a) by a preponderance of evidence. *Gullickson v. Brown,* 108 F.3d 1290, 1294 (10th Cir. 1997).

24. Whether proceeding under 11 U.S.C. § 727(a)(2) or (a)(4), the existence of fraudulent intent may be inferred from the surrounding facts and circumstances. *Job v. Calder (In re Calder), per curiam,* 907 F.2d 953, 956 (10th Cir. 1990) ("[F]raudulent intent [under § 727(a)(4)] may be deduced from the facts and circumstances of a case.") (citation omitted); *In re Davison,* 296 B.R. 841, 847 (Bankr.D.Kan. 2003) ("'a finding of actual intent [under § 727(a)(4)] may be based on

5

circumstantial evidence or on inferences drawn from a course of conduct.'") (quoting 6 Collier on Bankruptcy ¶ 727.04[1][b] at 727-40 (Alan N. Resnick, et al., eds., 15th ed. rev. 2003)); *Cohen v. Pond (In re Pond),* 221 B.R. 29, 33 (Bankr.M.D.Fla. 1998) ("Actual intent [under § 727(a)(2)(A)] may be ascertained from the totality of circumstances.") (citations omitted); *In re Zimmerman,* 320 B.R. 800, 806 (Bankr.M.D.Pa. 2005) (noting that "[f]raudulent intent is an element of a case under either Section 727(a)(2) or (a)(4)" and that "'[i]ntent can be established by circumstantial evidence . . . '") (quoting *In re Unruh,* 278 B.R. 796, 803 (Bankr.D.Minn. 2002).

25. A debtor's discharge may be denied pursuant to 11 U.S.C. § 727(a)(2) if

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed --
      (A) property of the debtor within one year before the date of the filing of the petition

11 U.S.C. § 727(a)(2)(A).

26. A debtor's granting of a security interest in unencumbered property, if done with the requisite intent to hinder, defraud or delay creditors within one year of the filing of the petition, can constitute a transfer within the meaning of 11 U.S.C. § 727(a)(2)(A), subjecting the debtor to a denial of discharge. *See, Gullickson v. Brown,* 108 F.3d at 1293 n.1 (noting in a case involving a denial of discharge under 11 U.S.C. § 727(a)(2)(A) predicated on the debtor's grant of a security interest in an antique car collection that "there is no question that a grant of a security interest does constitute a transfer" but concluding that there was no evidence of fraudulent intent); *In re Lawson,* 193 B.R. 520, 523 (9th Cir. BAP 1996), *aff'd,* 122 F.3d 1237 (9th Cir. 1997) (though transfer occurred more than one year prior to the filing of the bankruptcy petition, debtor's granting of a deed of trust on her

6

residence to her mother constituted a transfer of property within the meaning of 11 U.S.C. § 727(a)(2)(A), and formed basis for denial of discharge due to continuing concealment); *Pond,* 221 B.R. at 33-34 (concluding that debtors' placement of a lien on their 1992 Dodge Dakota in favor of debtor's sister in exchange for an alleged $5,000 loan was a transfer of the debtor's property made with the requisite intent to defraud, since the Court found the testimony concerning the loan not credible).

27. The United States Trustee alleges that the claim of lien placed on the Vacant Land by Debtor's brother constitutes a transfer of the Debtor's property within the meaning of 11 U.S.C. § 727(a)(2)(A), sufficient to deny the Debtor's discharge. The United States Trustee points to circumstantial evidence surrounding the filing of the claim of lien in support of its position. Specifically, just prior to the recording, a judgment had been entered against the Debtor in state court. Subsequently, the Debtor met with his brother, Ted Saavedra, to tell him that he had lost his state court case, that he was contemplating filing for bankruptcy, and that he was likely to lose the Vacant Land. The Debtor's brother became upset upon hearing this information, and filed the claim of lien to encumber the Vacant Land.

28. The Debtor's brother testified that he filed the claim of lien on the Vacant Land in an attempt to protect the land from the Debtor's creditors, but that the Debtor did not ask or encourage him to file the claim of lien. He also testified that he did not tell his brother about the claim of lien until after he had filed it. On the other hand, when the Debtor was questioned about the claim of lien at the § 341 meeting of creditors, he stated that "we" put a lien on there, and Ted Saavedra gave deposition testimony that he did not know where "they" came up with the $10,000.00 lien figure. These remarks

7

indicate that the Debtor and his brother together determined to place a claim of lien on the Vacant Land in an attempt to protect the Vacant Land from Debtor's creditors.

29. While the claim of lien may have been filed with the Debtor's knowledge, it was nevertheless invalid. Ted Saavedra has agreed to release it, and the Debtor acknowledged at his § 341 meeting that the claim of lien had been "taken care of" and could be released. The Court finds that testimony and circumstantial evidence is insufficient to establish that the *Debtor* transferred an interest in property when his *brother* recorded the sham claim of lien against the Vacant Land, or that the Debtor had the requisite intent to defraud at the time his brother recorded the claim of lien. The Court therefore concludes that the recording of an invalid claim of lien against the Vacant Land does not constitute a transfer of the Debtor's property with intent to hinder, delay or defraud creditors, which would subject the Debtor to a denial of discharge under 11 U.S.C. § 727(a)(2)(A).

30. A debtor's discharge may be denied pursuant to 11 U.S.C. § 727(a)(4) where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail under this subsection, the objector must prove "by a preponderance of evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact." *Gullickson v. Brown,* 108 F.3d at 1294 (citation omitted). "A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Wills,* 243 B.R. 58, 62 (9th Cir. BAP 1999) (citing *In re Chalik,* 748 F.2d 616, 618 (11th Cir. 1984)); *Davison,* 296 B.R. at 847 (same).

31. Misstatements in a debtor's statements and schedules can constitute false oaths within the

8

meaning of 11 U.S.C. § 727(a)(2)(A). *Calder,* 907 F.2d at 955 ("[A]n omission of assets from a Statement of Affairs or schedule may constitute a false oath under section 727(a)(4)(A).") (citing *Farmers Co-op Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982)). Although it is more unusual, an undervalued asset, even though it is listed in the statements and schedules, can also form the basis of a denial of discharge pursuant to 11 U.S.C. § 727(a)(2)(A). *See Zimmerman,* 320 B.R. at 807 (stating that "courts are more reluctant to deny a debtor's discharge when assets are undervalued than when they are undisclosed" but concluding that the debtor's undervaluation of several investment properties and other personal property on his statements and schedules constituted false oaths warranting a denial of discharge under § 727(a)(4)); *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner),* 208 B.R. 69 (9th Cir. BAP 1997), *rev'd,* 161 F.3d 1216 (9th Cir. 1998)[4] (affirming decision to deny discharge based on undervaluation of ring purchased for $6,000.00, and insured for $21,000.00, but valued at $2,500.00); *In re Unruh,* 278 B.R. 796 (Bankr.D.Minn. 2002) (omissions and misstatements, including undervaluation of assets contributed to finding that Debtor made false oaths under 11 U.S.C. § 727(a)(4) sufficient to deny his discharge). *But cf. In re Blum,* 41 B.R. 816 (Bankr.S.D.Fla. 1984) (concluding that debtor's undervaluation of two vehicles was insufficient grounds to deny the debtor's discharge when the trustee was given an opportunity to have the vehicles appraised); *In re Scott,* 233 B.R. 32, 45 (Bankr.N.D.N.Y. 1998) (finding that misstatement as to value of vacant land was insufficient to deny discharge, since claimed homestead exemption in the land

---

[4]The Ninth Circuit reversed and remanded *Weiner* on grounds that the bankruptcy court improperly refused to reconsider its oral ruling denying discharge in light of a post-trial appraisal of the property reflecting that the debtor had, in fact, overvalued, rather than undervalued the property. *In re Weiner,* 161 F.3d 1216 (9th Cir. 1998).

9

was clearly frivolous on the face of the debtor's schedules); *In re Wines,* 114 B.R. 794, 797 (Bankr.S.D.Fla. 1990), *aff'd in part and rev'd in part,* 997 F.2d 852 (11th Cir. 1993) ("Undervaluation of assets which are otherwise properly listed in a debtor's schedules is not sufficient to warrant a denial of discharge.") (citing *Blum,* 41 B.R. 816).

32. Similarly, false statements made at a § 341 meeting of creditors can constitute false oaths within the meaning of 11 U.S.C. § 727(a)(4). *In re Reed,* 293 B.R. 65, 69 (Bankr.D.Kan. 2003) ("A false statement by the debtor at an examination during the course of the proceedings also may constitute a false oath under § 727(a)(4)(A).") (citation omitted); *In re Von Behren,* 314 B.R. 169, 178 (Bankr.C.D.Ill. 2004) ("If made with the requisite fraudulent intent, a false statement, whether made in the schedules or orally at a § 341 creditors' meeting, is sufficient grounds for denying a discharge provided it was knowingly made and is material.") (citation omitted).

33. However, a statement, though false, will not sustain a denial of discharge if the "statement is due to mere mistake or inadvertence." *Gullickson v. Brown,* 108 F.3d at 1294 (citation omitted). Nor will an honest error or mere inaccuracy form sufficient grounds to deny a discharge. *Id.* (citation omitted).

34. Debtor's undervaluation of the Vacant Land on his statements and schedules, coupled with his false testimony concerning the Vacant Land proffered at the § 341 meeting of creditors constitutes a false oath within the meaning of 11 U.S.C. § 727(a)(4) sufficient to deny the Debtor's discharge. Debtor valued the Vacant Land on his statements and schedules at $500.00 per acre when he knew the land was worth significantly more. Debtor had obtained a loan in the amount of $10,378.00 to purchase a car that was secured solely by the Vacant Land. Regardless of whether the

10

loan officer completed the loan application based on information he obtained independently or whether the Debtor supplied the estimated values, clearly Debtor was made aware that the Vacant Land was worth at least $10,000.00 when the Bank was willing to give him a loan for $10,378.00 that was secured solely by the Vacant Land. That the Bank was willing to loan over $10,000.00 secured solely by the Vacant Land put the Debtor on notice that the Vacant Land was worth significantly more than the $500.00 per acre reported on the Debtor's schedules.

35. Moreover, Debtor's testimony at the § 341 meeting of creditors that the Vacant Land was worthless because there was "a lot of salt on it" and "nothing really wants to grow on it" was false and intended to mislead the trustee into thinking the asset was not worth pursuing. Debtor knew that he had been paying the irrigation charges associated with the Vacant Land and that irrigation rights would make the property more valuable. He knew his brother grew alfalfa on the Vacant Land and grazed cattle there. The likely result of the Debtor's false statements would have hampered the administration of the estate since the trustee would abandon a "worthless" asset; the statements are, therefore, material. *Cf. Scott,* 233 B.R. at 45 (discussing *Weiner,* 208 B.R. at 72, and stating that in *Weiner*, the debtor's undervaluation of an asset the debtor claimed as exempt "created the risk that the fraud would go undetected to the detriment of all creditors."). By undervaluing the Vacant Land on his statements and schedules, and then falsely testifying as to its use at the § 341 meeting of creditors, the Debtor intended to mislead the trustee and his creditors. These statements constitute false oaths made knowingly and fraudulently in connection with the Debtor's bankruptcy proceeding.

36. Debtor valued his Residence on his statements and schedules at $53,000.00, and claimed a homestead exemption in the Residence in the amount of $60,000.00, though seven years prior in

11

connection with a previous bankruptcy filing, the Debtor had valued the Residence at $68,000.00. The fact that the Residence is in need of some repair may serve as a partial explanation for the decreased value. But the severe hail storm that damaged the roof occurred *after* the Debtor filed his bankruptcy petition. The appraiser valued the Residence at $90,000.00, and a realtor has been employed by the estate to sell the Residence.

37. Debtor asserts that any misstatement as to the value of the Residence is not material. While "omissions or misstatements relating to assets having little or no value may be considered immaterial . . . . an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate." *Wills,* 243 B.R. at 63 (citation omitted). Like the Debtor's undervaluation of the Vacant Land, the Debtor's valuation of his Residence, coupled with his claimed exemption for the full value, indicate that the Debtor intended to mislead the trustee into abandoning a property that, if sold, might realize substantial funds for the benefit of creditors.

38. Debtor's valuation of his Residence on his statements and schedules at $53,000.00, taken together with his misstatements as to the value of the Vacant Land indicates a pattern of incomplete disclosure on the part of the Debtor in connection with this bankruptcy proceeding. *Cf. Keeling v. Ozey (In re Ozey),* 172 B.R. 83, 89 (Bankr.N.D.Okla. 1994) (finding that the debtor's "pattern of self-interest" in numerous statements, acts and omissions regarding the debtor's assets and income resulted in the "obstruction of the legitimate interests of creditors" and the trustee warranting a denial of the debtor's discharge.); *Hatton v. Spencer (In re Hatton),* 204 B.R. 477, 484 (E.D.Va. 1997) (noting that the cumulative effect of multiple inaccuracies in a debtor's petition and bankruptcy

12

schedules evidences a "cavalier disregard for the truth" sufficient to deny a discharge under 11 U.S.C. § 727(a)(4)).

39. "The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate." *Von Behren,* 314 B.R. at 178 (citation omitted). "Bankruptcy is a give-and-take process, and, in order for Debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure to their creditors and the Trustee." *In re Hooper,* 274 B.R. 210, 220 (Bankr.D.S.C. 2001). This the Debtor failed to do. Though the penalty is harsh, the result is just, for it ensures that a debtor who fails to give a complete and candid disclosure of his assets will not benefit to the detriment of his creditors contrary to the requirements of the Bankruptcy Code.

Based on the foregoing, the Court concludes that the United States Trustee has met her burden of proving by a preponderance of evidence that the Debtor made a false oath or statement within the meaning of 11 U.S.C. § 727(a)(4). Consequently, the Debtor's discharge will be denied. These Findings of Fact and Conclusions of Law are entered pursuant to Rule 7052, Fed.R.Bankr.P. An appropriate judgment and order will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

13

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

Alice Nystel Page
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

Stephen Long
Attorney for Defendant
2501 Yale Blvd. SE, Suite 204
Albuquerque, NM 87106

*Patti G. Hennessy*
_____
Patti G. Hennessy
Law Clerk (505) 348-2545

14